UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| GABRIELA LEOS, | Case No. 2:23-cv-02427-DTB |
| Plaintiff, | |
| v. | **ORDER REGARDING SETTLEMENT AGREEMENT** |
| CITY OF EL MONTE, et al., | |
| Defendants. | |

**I.**

**INTRODUCTION**

Pursuant to the Settlement Agreement ("Settlement Agreement") entered into by the parties at the mandatory settlement conference held with the Court on December 26, 2024 ("Settlement Conference"), the parties have submitted a dispute to the Court regarding a term of the Settlement Agreement. The Court has considered the parties' respective positions regarding the dispute and rules as set forth herein.

/ / /

/ / /

/ / /

/ / /

/ / /

1

## II.

## BACKGROUND

The Settlement Agreement, which was placed on the record at the conclusion of the Settlement Conference, was comprised of ten terms. (See, e.g., Docket No. 173 at 8-9; Docket No. 162 at 14-16; Docket No. 169-1 at 17-19). Term No. Three of the Settlement Agreement stated as follows:

"Defendant Jessica Ancona shall provide within 30 days of the conclusion of her civil matter a written apology that shall be mutually agreed upon by the parties. In the event that an agreement cannot be reached, the Honorable David T. Bristow shall meet and confer with counsel and make a final determination on the language for the apology."

On June 27, 2025, counsel for Plaintiff Gabriela Leos ("Plaintiff") or ("Leos") and counsel for Defendant Jessica Ancona, Mayor of the City of El Monte ("Mayor Ancona" or "Ancona") emailed the Court's chambers with a request to resolve a dispute over the proposed verbiage of Mayor Ancona's apology. ("Request"). The Request included both Leos' and Mayor Ancona's proposed texts for the apology. On July 3, 2025, the Court held a telephonic conference with the parties to confer about the dispute. During the call, the Court discussed the basic purpose and composition of an apology in general, as well as the contours of the Settlement Agreement for purposes of Mayor Ancona's apology. At the conclusion of the call, the Court encouraged counsel to further confer and to attempt to reach agreement on the text for Mayor Ancona's apology. Counsel for Plaintiff and Mayor Ancona agreed to do so, indicating that they believed they now had direction to agree upon suitable language. The Court advised counsel that if they were still unable to agree on an apology after further conference, they should advise the Court of such, and it would resolve the dispute pursuant to the terms of the Settlement Agreement. On July 3, 2025, counsel again emailed the Court's chambers and informed the Court that Mayor Ancona and Plaintiff remained at an impasse over the text of the apology.

1  The July 3, 2025, email also set forth each side's revised verbiage for the requisite apology and requested the Court to make a final determination.

On July 8, 2025, counsel again emailed the Court's chambers and counsel for Defendant Ancona requested to submit argument – not to exceed one page – in support of her position regarding the written apology. The Court informed counsel that each party could submit argument in support of their respective position, not to exceed one page in length, by the end of the business day on July 8, 2025. Both Plaintiff and Mayor Ancona submitted one-page summations of their respective positions.

Pursuant to Term No. Three of the Settlement Agreement, the parties empowered the Court to act as the final arbiter of any dispute regarding the apology.[1] Having considered the parties' submission and their respective positions, the Court now makes a final determination of the dispute as set forth herein.

### III.
### LEGAL AUTHORITY

As this Court has noted in the previous dispute regarding the Settlement Agreement, California law is applicable to the instant matter as "[t]he Construction and enforcement of settlement agreements are governed by principles of local law

---

[1] The Court is also authorized to consider the instant dispute on a number of other grounds. First, by agreement of the parties and pursuant to the terms of the Settlement, "any and all disputes regarding terms or enforcement of the Settlement Agreement shall be decided by Judge Bristow" (Exhibit "A" to the Declaration of David G. Torres-Siegrist attached to Plaintiff's Brief (Docket No. 169-1 at 16, Settlement Agreement ¶ 8)), as well as "the Court shall retain jurisdiction to enforce the terms of the Settlement Agreement" (id. at ¶ 9). Moreover, the parties have independently expressly consented to proceed before this Court for all purposes. (Consent to Proceed Before United States Magistrate Judge (Docket No. 160)). Finally, a federal court has the inherent power to enforce a settlement agreement entered into while the litigation is pending before it. In re City of Equities Anaheim, Ltd., 22 F.3d 954, 957 (9th Cir. 1987), see also Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 380-81 (1994); Dacanay v. Mendoza, 573 F.2d 1075, 1078 (9th Cir. 1978); Doi v. Halekulnai Corp., 276 F.3d 1131, 1138 (9th Cir. 2002). (The district court's authority to summarily enforce settlement agreements extends to oral agreements placed on the record.)

which apply to interpretation of contracts generally." O'Neil v. Bunge Corp., 365 F.3d 820, 822 (9th Cir. 2004) (quoting United Commercial Ins. Serv., Inc. v. Paymaster Corp., 962 F.2d 853, 856 (9th Cir. 2015) ("A settlement is a contract, and its enforceability is governed by familiar principles of contract law.") (citations omitted). Pursuant to California law, the interpretation of a settlement agreement is governed by principles of contract law. See, e.g., Winet v. Price, 4 Cal.App.4th 1159, 1165 (1992).

Under California law, a contract requires, *inter alia*, the consent of the parties. Cal. Civ. Code § 1550. Such consent must be free, mutual and communicated to each party. Cal. Civ. Code § 1565. A court must interpret a contract with the goal of giving effect to the mutual intention of the parties as it existed at the time it was made. Cal. Civ. Code § 1636. The existence of mutual consent is a question of fact. Martinez v. BaronHR, Inc., 51 Cal.App.5th 962, 966 (2020). Generally, mutual consent exists when "the parties all agree upon the same thing in the same sense." Cal. Civ. Code § 1580; see Sellers v. Just Answer, LLC, 73 Cal.App.5th 444, 460 (2021). Mutual consent is determined through an objective standard that considers the reasonable meaning of the parties' words and actions; the subjective, unexpressed intentions of the parties are irrelevant to the analysis. Reigelsperger v. Siller, 40 Cal.4th 574, 579 (2007). "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal. Civ. Code § 1638. When interpreting a written contract, the words are to be "understood in their ordinary and popular sense." Cal. Civ. Code § 1644.

## IV

## DISCUSSION

To resolve this dispute, the Court considers Term No. Three of the Settlement Agreement and, specifically, endeavors to determine the intention of the parties regarding Mayor Ancona's obligation to provide a written apology to Plaintiff. For

purposes of interpreting the meaning of a word in a contract, a dictionary may be consulted to ascertain its "ordinary sense" for purposes of Cal. Civ. Code § 1644. "[C]ourts . . . regularly use the phrase 'ordinary dictionary definition or meaning' as if 'ordinary' were synonymous with 'dictionary.'" Scott v. Continental Ins., Co., 44 Cal.App.4th 24, 29 (Cal.Ct.App. 1996).

Webster's Unabridged New International Dictionary (2nd Ed., 1934) defines the word "apology" (for the purposes of the instant dispute) as follows:

> "An acknowledgment intended as an atonement for some improper or injurious remark or act; an admission to another of a wrong or discourtesy done to him, accompanied by an expression of regret."

Term No. Three of the Settlement Agreement requires Mayor Ancona to provide a written apology to Plaintiff. While each of the parties' proffered apology texts include some core language that seems to qualify under the definition above, each text also includes extraneous verbiage which undermines or strays from the spirit and intent of Term No. Three.

An apology, as defined, is intended to atone for an improper or injurious action, to be an admission of wrongdoing accompanied by an expression of regret. Accordingly, the Court finds the following language satisfies Mayor Ancona's obligation under Term No. Three of the Settlement Agreement.

> "As the Mayor of El Monte and a defendant in this action, I hereby apologize to Plaintiff Gabriela Leos for the harm my actions in this matter have caused her. I was wrong to have behaved in the manner that I did, and I am truly sorry for my conduct."

_____
Hon. Jessica Ancona, July \_\_\_, 2025

5

Pursuant to her obligation in Term No. Three, Mayor Ancona shall sign and date the written apology set forth above in ink, with a wet signature, and cause it to be delivered to Plaintiff's counsel within two business days of the date of this Order.

## V

## CONCLUSION

Defendant Jessica Ancona, in her official capacity as Mayor of the City of El Monte, is hereby ORDERED to sign and date the written apology set forth herein, in wet ink, and thereafter deliver the signed apology to Plaintiff's counsel within two business days of the date of this Order.

Dated: July 17, 2025

_____
DAVID T. BRISTOW
United States Magistrate Judge